IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLORIA RHYNES, individually and on behalf of the General Public, and DARRELL JENKINS,<br><br>    Plaintiffs,<br><br>    v.<br><br>STRYKER CORPORATION; STRYKER ORTHOPEDICS; and DOES 1 through 30, inclusive,<br><br>    Defendants. | Case No. 10-5619 SC<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE |

## I.   INTRODUCTION

Before the Court is a combined Motion to Dismiss and Motion to Strike filed by Defendants Stryker Corporation and Stryker Orthopedics ("Defendants" or "Stryker"). ECF No. 14 ("Mot."). The Motion is fully briefed. ECF No. 21 ("Opp'n"), 22 ("Reply"). Pursuant to Civil Local Rule 7-1(b), the Court finds the Motion suitable for determination without oral argument. For the reasons stated below, the Court GRANTS Stryker's Motion.

## II.   BACKGROUND

This action concerns alleged defects in a medical device known as a Trident acetabular shell ("the prosthesis") that was allegedly

implanted in Plaintiff Gloria Rhynes ("Rhynes") as part of hip replacement surgery in August 2005.[1]  ECF No. 1 ("Not. of Removal") Ex. A ("Compl.") ¶ 5.  Rhynes alleges that Stryker manufactured and designed the prosthesis, and together with Doe Defendants, marketed and sold the prosthesis.  Id. ¶¶ 3-5.  She alleges that the prosthesis was defective "because, among other things, manufacturing contamination, design defects, and manufacturing discrepancies caused the loosening of the shell."  Id. ¶ 5.  She alleges that she was injured by the prosthesis when it was implanted on August 15, 2005, but that she was unaware of the injury until February 2009.  Id.

On September 30, 2010, Rhynes and her husband, Plaintiff Darrell Jenkins ("Jenkins") (collectively, "Plaintiffs"), filed this action in Superior Court for the County of San Francisco.  See Compl.  Rhynes asserts claims for (1) strict liability for defective product; (2) negligence; (3) violation of California Business and Professions Code § 17200; and (4) wanton and reckless misconduct.  See id.  Jenkins asserts a claim for loss of consortium.  Id.  Defendants removed the case to this Court on December 10, 2010, on the basis of diversity jurisdiction under 28 U.S.C. §§ 1332(a)(1) and 1441(a).  See Not. of Removal.

///
///
///

---

[1] In their Opposition, Plaintiffs state that the prosthesis was part of a knee replacement, while in their Complaint they allege it was part of a hip replacement.  The Court takes well-pleaded factual allegations as true when considering a Motion to Dismiss and will therefore assume the veracity of Plaintiffs' allegation in the Complaint that the prosthesis was implanted as part of a hip replacement.

2

## III. LEGAL STANDARD

### A. Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1950 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A complaint need not contain "detailed factual allegations," but it must provide more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 1949. The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Thus, a motion to dismiss should be granted if the plaintiff fails to proffer "enough facts to . . . nudge[] [its] claims across the line from conceivable to plausible." Id. at 570.

### B. Motion to Strike

Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial,

3

impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).
Motions to strike are generally regarded with disfavor.  <u>Ganley v.
County of San Mateo</u>, No. 06-3923, 2007 WL 902551, at *1 (N.D. Cal.
Mar. 22, 2007).  The essential function of a Rule 12(f) motion is
to "avoid the expenditure of time and money that must arise from
litigating spurious issues by dispensing with those issues prior to
trial."  <u>Fantasy, Inc. v. Fogerty</u>, 984 F.2d 1524, 1527 (9th Cir.
1993), <u>rev'd on other grounds</u>, 510 U.S. 517 (1994).

**IV. DISCUSSION**

    **A.  Motion to Dismiss**

        1.  <u>Strict Liability and Negligence Claims</u>

Defendants contend that Rhynes's first claim for strict liability and second claim for negligence are barred by the applicable statute of limitations because they were not brought within two years of the date on which Rhynes was allegedly injured. Mot. at 3.  They also contend that Plaintiffs have pleaded insufficient facts to state plausible claims for strict liability and negligence under <u>Iqbal</u>.  <u>Id.</u> at 3-4.  Plaintiffs argue that the statute of limitations did not begin to run until Rhynes discovered her injury in February 2009 and that they have included sufficient facts to withstand a motion to dismiss.  Reply at 2.

The California Code of Civil Procedure provides that the applicable statute of limitations for a personal injury action is two years.  Cal. Civ. Proc. Code § 335.1.  However, California law includes a discovery rule that delays the accrual of a cause of action until a plaintiff either became aware of the injury and its cause or could have discovered the injury and cause through

4

reasonable diligence.  Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 808 (2005).  In order to rely on the discovery rule, "a plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence."  Id. (internal quotation omitted).  "In assessing the sufficiency of the allegations of delayed discovery, the court places the burden on the plaintiff to show diligence; conclusory allegations will not withstand demurrer."  Id. (internal quotations omitted).

    Here, Rhynes alleges that she was injured by the prosthesis when it was implanted during hip surgery on August 15, 2005.  She seeks to rely on the discovery rule because she allegedly did not discover the injury until February 2009.  However, Rhynes has not pleaded specific facts to show the manner in which she discovered her injury or her inability to have discovered it earlier.  Rather, she has merely stated in conclusory fashion, "[t]he plaintiff was unaware of the injury from the defect until February 2009."  Compl. ¶ 5.  Such conclusory allegations do not suffice to invoke the discovery rule under Fox.  Absent proper invocation of the discovery rule, the statute of limitations for Rhynes's first and second claims expired on August 15, 2007.

    The Court also agrees with Defendants' contention that Rhynes has not alleged sufficient facts in support of her first and second claims to make the claims plausible under Iqbal.  Most notably, Rhynes has not alleged any facts in support of the allegation that she was injured by the prosthesis.  Rather, she alleges only that:

5

"plaintiff was injured by the [prosthesis] when it was surgically implanted during hip surgery, in that said device has failed to perform its intended purpose." Compl. ¶ 5. She further alleges that design and manufacturing defects "caused the loosening of the [prosthesis]." Id. However, she does not allege facts indicating how the loosening of the prosthesis has caused her harm. This pleading deficiency should be easy for Rhynes to cure if she chooses to file an amended complaint.

Accordingly, the Court DISMISSES Plaintiff's strict liability claim and negligence claim WITH LEAVE TO AMEND.

    2. <u>Third Claim for Violation of California Business and Professions Code § 17200</u>

Rhynes's third claim alleges that Stryker and Doe defendants violated California's Unfair Competition Law ("UCL") as set forth in California Business and Professions Code § 17200 et seq. Compl. ¶¶ 18-28. Rhynes alleges that Defendants engaged in unlawful, unfair, and fraudulent business practices by, among other things, "[p]roviding insufficient, misleading, and deceptive information to patients and their doctors" and "concealing the existence of patient complaints." Id. ¶ 22. Rhynes seeks restitution and injunctive relief for this claim. She seeks restitution "to Plaintiff (and others) of the amounts retained by said defendants for the sale of said defective products." Id. ¶ 27. She seeks injunctive relief "to prevent the continuation of such unfair business practices by said defendants, and to require said defendants to notify patients and their physicians of the true, scientifically based parameters of the quality and efficacy of the product." Id.

6

1  Stryker argues that Rhynes's UCL claim should be dismissed
2  with prejudice because the equitable relief she seeks is
3  unavailable as a matter of law.  Stryker notes that equitable
4  relief is only available where there is no adequate remedy at law
5  and contends that in this case money damages will provide
6  Plaintiffs with an adequate remedy if they prevail on their
7  products liability claims.  Plaintiff's only argument in response
8  is that "[o]bviously, if the claims for damages are dismissed as
9  lacking merit, there is no adequate remedy at law."  Opp'n at 3.
10 Plaintiffs provide no authority supporting their position.  The
11 Court agrees with Stryker.
12     The UCL only provides equitable remedies.  Madrid v. Perot
13 Systems Corp., 30 Cal. Rptr. 3d 210, 218 (Ct. App. 2005) ("[T]he
14 UCL limits the remedies available for UCL violations to restitution
15 and injunctive relief.").  A plaintiff seeking equitable relief
16 must establish that there is no adequate remedy at law available.
17 Philpott v. Super. Ct., 1 Cal. 2d 512, 517 (1934) (holding
18 injunctive relief not available where legal remedy was adequate);
19 Knox v. Phoenix Leasing, Inc., 29 Cal. App. 4th 1357, 1368 (Ct.
20 App. 1994) (holding restitution not available where statute
21 provides for money damages).  The California Court of Appeal
22 extended this principle to actions under the UCL in Prudential Home
23 Mortgage Company v. Superior Court, 66 Cal. App. 4th 1236, 1249
24 (Ct. App. 1998) (holding that statutory relief under the UCL "is
25 subject to fundamental equitable principles, including inadequacy
26 of the legal remedy.")
27     The Central District of California has applied this rule to
28 strike a plaintiff's request for injunctive relief under the UCL in

7

a medical device products liability action similar to this one. See <u>Adams v. I-Flow Corp.</u>, No. CV09-09550, 2010 WL 1339948, at *7 (C.D. Cal. Mar. 30, 2010) (striking with prejudice plaintiff's request for injunction prohibiting pain pump and anesthetic manufacturers from false advertising).

The Court concludes that in this case, as in <u>Adams</u>, the compensatory damages Plaintiffs seek provide an adequate remedy at law to redress their alleged injuries. Plaintiffs' argument that they will have no adequate remedy at law if their other claims fail is unavailing. Where the claims pleaded by a plaintiff <u>may</u> entitle her to an adequate remedy at law, equitable relief is unavailable. <u>See</u>, <u>e.g.</u>, <u>Adams</u>, 2010 WL 1339948, at *7 ("Should plaintiffs ultimately prevail on their claims, they will be adequately compensated for their alleged injuries by an award of damages.") (emphasis added); <u>Stationary Eng'rs Local 39 Health & Welfare Trust Fund v. Philip Morris, Inc.</u>, No. C-97-01519, 1998 U.S. Dist. LEXIS 8302, at *56 (N.D. Cal. Apr. 30, 1998) ("Because plaintiffs may be able to state claims for fraud and misrepresentation and negligent breach of intentional duty, plaintiffs cannot show that there is no adequate remedy at law.")(emphasis added).

Moreover, to the extent that Plaintiffs seek injunctive relief on behalf of the general public,[2] Plaintiffs' request fails as a matter of law. The 2004 amendments to the UCL provide that a party seeking relief on behalf of the public must satisfy class action pleading requirements. Cal. Bus. & Prof. Code § 17203.

---

[2] Plaintiffs do not argue this point in their Opposition. However, their Complaint alleges that "[a] legal remedy is inadequate to protect others among the public from being harmed in the future by such unfair business practices," and they purport to bring their action "individually and on behalf of the general public." Compl. at ¶ 27.

8

Plaintiffs' Complaint lacks the requisite class allegations. <u>See</u> <u>Netscape Commc'ns. Corp. v. Fed. Ins. Co.</u>, No. 06-00198, 2006 U.S. Dist. LEXIS 9569, at *12-13 (N.D. Cal. Feb. 22, 2006). Furthermore, even if the Complaint contained the proper class allegations, Rhynes would not be entitled to seek injunctive relief on behalf of the public because she is not individually entitled to such relief. <u>See</u> <u>Hodgers-Durgin v. De La Vina</u>, 199 F.3d 1037, 1045 (9th Cir. 1999) ("Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief.").

Accordingly, the Court DISMISSES Rhynes's third claim for violations of the UCL WITHOUT LEAVE TO AMEND.

### 3. Fourth Claim for Punitive Damages

Rhynes's fourth claim alleges wanton and reckless misconduct. The tort of wanton and reckless misconduct occurs when "a person with no intent to cause harm intentionally performs an act so unreasonable and dangerous that he knows, or should know, it is highly probable that harm will result." <u>Nolin v. Nat'l Convenience Stores, Inc.</u>, 95 Cal. App. 3d 279, 286 (Ct. App. 1979). A showing of wanton and reckless misconduct entitles a plaintiff to punitive damages, and Plaintiffs therefore seek punitive damages on the basis of this claim. Compl. at 10. Both parties refer to the claim as Plaintiffs' "punitive damages claim." <u>E.g.</u>, Mot. at 7; Opp'n at 4.

Stryker moves to dismiss Plaintiffs' punitive damages claim on the ground that it is insufficiently pleaded under <u>Twombly</u> and <u>Iqbal</u>. Rhynes disagrees.

California Civil Code § 3294(a) allows for the recovery of

9

punitive damages only where a plaintiff shows the defendant acted with malice, oppression, or fraud in connection with the tortious conduct at issue.  Under § 3294(b), malice is defined as either: (1) conduct which is intended by the defendant to cause injury to the plaintiff or (2) "despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others."  Cal. Civ. Code § 3294(b).  Here, Plaintiffs do not allege that Stryker intended to cause injury; rather they allege that Stryker engaged in "despicable conduct."  See Compl. ¶¶ 30, 32.  California courts have defined "despicable conduct" as conduct which is "so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary people."  See Mock v. Mich. Millers Mut. Ins. Co., 4 Cal. App. 4th 306, 331 (Ct. App. 1992).

    Thus, in order for Plaintiffs' punitive damages claim to survive a motion to dismiss, Plaintiffs must allege sufficient facts to state a plausible claim that Stryker engaged in vile, base, and contemptible conduct.  Stryker argues that Rhynes has failed to meet this standard.  The Court agrees.

    Rhynes accurately summarizes the various allegations that form the basis for her punitive damages claim as follows: "Defendants knew that their product was defective and could cause injury, and not only allowed it to be used in Plaintiff's surgery anyhow -- through their authorized agents, they promoted the use of their product and actively concealed their knowledge of its known performance problems."  Opp'n at 4; See Compl. ¶¶ 22, 29, 30.

    The Court finds that Plaintiffs' claim for punitive damages is devoid of factual support.  Plaintiffs' allegations that Stryker

"provid[ed] insufficient, misleading and deceptive information" to patients and doctors, "fail[ed] to promptly and fairly investigate and identify the causes of the design [and manufacturing] defects," "concealed the existence of patient complaints," and was "well aware of numerous instances of product failure . . . at the time of Plaintiff's surgery" are merely conclusory statements not entitled to the presumption of truth under Iqbal and Twombly.  Plaintiffs have alleged no facts that support a plausible inference in support of these conclusions.  See Compl. ¶¶ 22, 30.  Plaintiffs also allege that a Doe Defendant engaged in the distribution of Stryker products "was in the operating room and discussed the use of the Stryker product with the physicians and concealed information regarding the difficulties with the manufacturing processes and the design even though problems had been reported many months before."  Compl. ¶ 5.  Absent are any alleged facts in support of the allegations that problems with the product had been reported months before and that the individual concealed such information.

     Stryker further contends that Plaintiffs' allegations are insufficient to support a punitive damages claim against a corporate entity.  Again, the Court agrees.

     California law provides that an employer may be liable for punitive damages in an action arising from the tortious conduct of its employee in three situations: "(1) when an employee was guilty of oppression, fraud or malice, and the employer with advance knowledge of the unfitness of the employee employed him or her with a conscious disregard of the rights or safety of others; (2) when an employee was guilty of oppression, fraud or malice, and the employer authorized or ratified the wrongful conduct; or (3) when

11

the employer was itself guilty of the oppression, fraud or malice." Weeks v. Baker & McKenzie, 63 Cal. App. 4th 1128, 1151 (Ct. App. 1998). For corporate employers, such as Stryker, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation. See Cal. Civ. Code § 3294(b).[3]

Rhynes contends that paragraph thirty-one of the Complaint contains sufficient allegations to support an award of punitive damages against Stryker. That paragraph states:

> [The acts giving rise to punitive damages] were either the acts of an officer, director, or managing agent of said defendants, or said acts were those of an employee of said defendants under circumstances where said defendants had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights and safety of others, or authorized or ratified the wrongful conduct as herein alleged.

Compl. ¶ 31.

These conclusory allegations of authorization or ratification fail to satisfy federal pleading standards. Plaintiffs have not alleged a single fact tending to show that any officer, director, or managing agent took any action amounting to authorization or ratification of the alleged misconduct or had knowledge of the

---

[3] Cal. Civ. Code § 3294(b) states: "An employer shall not be liable for [punitive damages], based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation."

12

unfitness of any employee. Paragraph 31 merely parrots the language of § 3294(b)'s corporate ratification provisions. Under Iqbal, threadbare recitals of statutory elements are insufficient to withstand a motion to dismiss. 129 S. Ct. at 1950. See also Kelley v. Corr. Corp. of Am., 750 F. Supp. 2d 1132, 1145-48 (E.D. Cal. 2010) (finding similar language insufficient to state a claim for punitive damages under Twombly and Iqbal standard).

Accordingly, Stryker's Motion to Dismiss Rhynes's fourth claim for punitive damages is GRANTED WITH LEAVE TO AMEND.

### B. Motion to Strike

Stryker asks the Court to strike Plaintiffs' strict liability design defect allegations. As Stryker notes, controlling California law unequivocally prohibits strict liability claims for design defect against manufacturers of prescription implantable medical devices. See Brown v. Super. Ct., 44 Cal. 3d 1049, 1061 (1988) ("[A] drug manufacturer's liability for a defectively designed drug shall not be measured by the standards of strict liability."); Hufft v. Horowitz, 4 Cal. App. 4th 8, 19-20 (Ct. App. 1992) ("[T]he rule of Brown . . . immunizing manufacturers of prescription drugs from strict liability for design defects, should be extended to manufacturers of implanted prescription medical devices."); Artiglio v. Super. Ct., 22 Cal. App. 4th 1388, 1395 (Ct. App. 1994) (applying Hufft to hold that manufacturer of breast implants was immune from strict liability for design defects). In Artiglio, the court expressly held that this determination can be made as a matter of law without the need for fact-finding, except for the sole factual determination that the device at issue is physician-directed and physician-applied (i.e., a "prescribed

13

device").  22 Cal. App. 4th at 1397.  Here, it is undisputed that Rhynes's hip implant prosthesis was obtained through a physician and qualifies as a prescribed device.

Plaintiffs argue that Hufft limited immunity to cases where the product has been properly made and distributed with adequate warnings of potential risks.  Opp'n at 5.  They rely on language in Hufft stating: "We hold that a manufacturer is not strictly liable for injuries caused by an implanted prescription medical product which has been (1) properly made and (2) distributed with information regarding risks and dangers of which the manufacturer knew or should have known at the time."  4 Cal. App. 4th at 20. They argue that because the instant Complaint contains manufacturing defect and improper warning allegations Stryker is not immune from strict liability for design defects.  Opp'n at 5.

Plaintiffs misconstrue the quoted language from Hufft to suggest that a manufacturer is only immune from strict liability for defective design if there are no allegations of manufacturing defects or inadequate warning labels.  Properly read, and as the rest of Hufft makes clear, this statement means that a manufacturer of prescription medical devices can be held strictly liable only for manufacturing defects or inadequate warnings -- it may not be held strictly liable for design defects.  In Hufft, as here, there were allegations of manufacturing defects and improper warnings; indeed, the court reversed the grant of summary judgment in favor of the manufacturer because triable issues of fact existed as to the adequacy of the warnings provided.  Id. at 23.

California law categorically protects manufacturers of prescription medical devices from strict liability for design

14

defects. Striking Plaintiff's strict liability design defect allegations would therefore serve the general purpose of Rule 12(f) by "avoid[ing] the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Fogerty, 984 F.2d at 1527. Accordingly, the Court GRANTS Stryker's motion to strike Plaintiff's strict liability design defect allegations.

**V.    CONCLUSION**

For the reasons stated above, the Court GRANTS Defendant Stryker's Motion and DISMISSES Plaintiffs Gloria Rhynes and Darrell Jenkins's first, second, and fourth claims WITH LEAVE TO AMEND. The Court DISMISSES Plaintiffs' third claim WITHOUT LEAVE TO AMEND. The Court STRIKES Plaintiffs' strict liability design defect allegations WITHOUT LEAVE TO AMEND.

If Plaintiff chooses to file an amended complaint, it shall be filed within thirty (30) days of this Order. Failure to do so will result in dismissal of the above claims in their entirety.

IT IS SO ORDERED.

Dated: May 31, 2011

UNITED STATES DISTRICT JUDGE