1  Steven R. Anthony [SBN 37778]
2  Jane L. Trigero, Of Counsel [SBN 103575]
   Peter G. Washington [SBN 230514]
3  ANTHONY & ASSOCIATES
   1999 Harrison Street, #1620
4  Oakland, California  94612
   Telephone: [510] 835-8400
5  Facsimile:  [510] 835-5566

6  Attorneys for Plaintiffs
   GLORIA RHYNES AND DARRELL JENKINS

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11 GLORIA RHYNES, Individually and on    )  Case No.:  C 10-05619-SC
   Behalf of the General Public, and DARRELL )
12 JENKINS,                               )  **PLAINTIFFS' OPPOSITION TO**
                                          )  **DEFENDANTS' MOTION TO DISMISS**
13              Plaintiffs,               )  **PLAINTIFFS' FIRST AMENDED**
                                          )  **COMPLAINT**
14 vs.                                    )
                                          )
15 STRYKER CORPORATION; STRYKER           )  Date:  September 23, 2011
   ORTHOPEDICS; and DOES 1 through 30,    )  Time:  10:00 a.m.
16 inclusive,                             )  Courtroom 1
                                          )
17              Defendants.               )
                                          )
18                                        )
                                          )
19                                        )

20                        **INTRODUCTION**

21         Defendants' motion to dismiss on preemption grounds relies on the hope that this Court

22 will simply count the citations to authority and never consider what the cases actually say.  As

23 agreed by every court which has considered the scope of MDA preemption since the U.S.

24 Supreme Court's decision in *Riegel v. Medtronic* (the cornerstone of defendants' argument),

25 product liability claims which allege violations of the FDA's requirements are ***not*** preempted.

26 The reason that the cases on which defendants rely were dismissed was that the plaintiffs in

27 those cases were not able to allege such violations.  Here, however, the plaintiff has alleged

28

                                    1
────────────────────────────────────────────────────────
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED
                            COMPLAINT

ANTHONY & ASSOCIATES
1999 HARRISON STREET, SUITE 1620
OAKLAND, CA 94612

1  such violations, so the motion to dismiss cannot succeed on preemption grounds.  Alternatively,

2  if the Court requires more specificity in the pleadings certainly leave to amend should be

3  granted as this issue has been raised for the first time in this motion.

4          As for the statute of limitations argument, defendants make the unwarranted logical leap

5  that simply because she experienced pain; plaintiff must have suspected wrongdoing (despite

6  the complaint's unequivocal allegations to the contrary.)  There is no basis in fact, logic or law

7  for defendants' argument, and as the complaint alleges all elements of the discovery rule, the

8  statute of limitations defense cannot succeed.

9                                       <u>ARGUMENT</u>

10  **A.       Plaintiff's Claims Survive MDA Preemption Because They Seek To Impose**

11  **Requirements Which Are Parallel With, Not In Addition To, Federal Requirements**

12          Defendants move to dismiss pursuant to the MDA's express preemption clause, which

13  states:

14          "[N]o State or political subdivision of a State may establish or continue in effect
          with respect to a device intended for human use any requirement-

15          "(1) which is different from, or in addition to, any requirement applicable under
16          this chapter to the device, and

17          "(2) which relates to the safety or effectiveness of the device or to any other
18          matter included in a requirement applicable to the device under this chapter."

19  21 U.S.C. <u>§</u> 360k(a).

20          Defendants base their motion chiefly on the U.S. Supreme Court's holding in *Riegel v.*

21  *Medtronic*, 552 U.S. 312 (2008).  There, the Court did indeed hold that express MDA

22  preemption is extensive when it comes to devices subject to the FDA's premarket approval

23  (PMA) scheme.  Preemption is not total, however, as was recognized in *Riegel* itself.

24  Defendants conveniently neglect to mention the claims which were held not preempted in

25  *Riegel*, even though that is precisely the sort of claim being made here.

26          In *Riegel*, the plaintiffs had sued in U.S. District Court on a wide variety of products

27  liability theories including claims based on alleged defects in the design, labeling and

28

ANTHONY & ASSOCIATES

1999 HARRISON STREET, SUITE 1620
OAKLAND, CA 94612

2

1   manufacture of the product.  The District Court held the design and labeling claims preempted.

2   "It also held that the MDA pre-empted a negligent manufacturing claim *insofar as it was not*

3   *premised on the theory that Medtronic violated federal law*."  *Id*. at p. 321 (emphasis added.)

4   Thus, the claim for design defect did survive the preemption arguments raised at the pleading

5   stage; not until later was that claim disposed of on summary judgment.  The summary judgment

6   was upheld on appeal, and that holding was not before the Supreme Court.  *Id*., fn. 2.

7        The reason that a manufacturing defect claim based on violation of federal law is not

8   preempted is made plain by a later passage in the *Riegel* opinion:

> State requirements are pre-empted under the MDA only to the extent that they
> are "different from, or in addition to" the requirements imposed by federal law.
> § 360k(a)(1). Thus, § 360k does not prevent a State from providing a damages
> remedy for claims premised on a violation of FDA regulations; the state duties
> in such a case "parallel," rather than add to, federal requirements. Lohr, 518
> U.S., at 495, 116 S.Ct. 2240; see also id., at 513, 116 S.Ct. 2240 (O'Connor, J.,
> concurring in part and dissenting in part). The District Court in this case
> recognized that parallel claims would not be pre-empted, see App. to Pet. for
> Cert. 70a-71a, but it interpreted the claims here to assert that Medtronic's device
> violated state tort law notwithstanding compliance with the relevant federal
> requirements, see *id.,* at 68a.

552 U.S. at p. 330.

17        As noted, defendants' motion fails entirely to mention this important aspect of the *Riegel*

18   decision.  Instead defendants present an impressively long list of cases in which "product

19   liability actions involving the Trident(tm) System" have been dismissed following *Riegel*,

20   dropping a footnote to concede (without citation) that "a small number of district courts have

21   denied motions to dismiss claims relating to the Trident(tm) System."  (Defendants' motion at p.

22   6, fn. 5.)  Those courts include the Eastern District of Missouri in *Warren v. Howmedica*

23   *Osteonics Corp.*, 2011 WL 1226975 (E.D.Mo. March 29, 2011), and the Southern District of

24   New York in *Gelber v. Stryker Corp.*, 2011 WL 1483927 (S.D.N.Y. April 18, 2011).  Only one

25   of the cases cited by defendants is more recent than *Warren* and *Gelber*: *Wilhite v. Howmedica*

26   *Osteonics Corp.*, 2011 WL WL 2530984 (N.D. Ohio June 20, 2011.)  One other, *White v.*

27   *Stryker*, 2011 WL 1131496 (W.D. Ky. Mar. 25, 2011) dates from a few days before *Warren*,

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED
COMPLAINT

1    and one other, *Funk v. Stryker*, 631 F.3d 77 (5th Cir. 2011) – the only Circuit Court decision in

2    defendants' list – is from earlier this year.

3         Regardless of the timing or the court in which the cases were venued, ***all*** of these recent

4    cases agree on the issue which, though defendants do not mention it at all, is central to this

5    motion: that a manufacturing defect claim which is "parallel" to the FDA's requirements is not

6    preempted by the MDA, because the claim does not seek to impose state-law requirements that

7    are "different from, or in addition to" the requirements of federal law.  The reason that some of

8    these cases resulted in dismissal and some did not has to do with differences in the facts alleged

9    by the plaintiffs (and, to a lesser extent, differing levels of pleading specificity required by the

10   different courts under *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) and *Bell Atlantic Corp. v.*

11   *Twombly*, 550 U.S. 544 (2007).)  Simply put, the plaintiffs in *Wilhite*, *White* and *Funk* did not

12   allege violations of FDA regulations, or did not do so with any specificity; the plaintiffs in

13   *Warren* and *Gelber* did.

14        *White, supra*, contains a useful discussion of the federal circuit decisions concerning this

15   issue in the wake of *Riegel*.  2011 WL 1131496 at p. 5.  To summarize: in June 2010, the Sixth

16   Circuit reversed a summary judgment, holding that a plaintiff's allegations that a knee device

17   violated one of the FDA's particular "Good Manufacturing Practices" ("GMPs") escaped

18   preemption.  *Howard v. Sulzer Orthopedics, Inc.*, 382 Fed. Appx. 436 (6th Cir. 2010)

19   (unpublished).  Next, the Eighth Circuit upheld a dismissal, finding that the plaintiffs in that

20   case had not alleged a violation of FDA regulations with enough specificity.  I*n re Medtronic,*

21   *Inc. Sprint Fidelis Leads Products Liability Litigation*, 623 F.3d 1200 (8th Cir. 2010).  Next, the

22   Seventh Circuit – in a case involving the very same Trident(tm) device at issue here – reversed

23   a dismissal, holding that the plaintiff's complaint sufficiently alleged a parallel claim despite not

24   identifying the particular FDA regulations that had been violated.  *Bausch v. Stryker*

25   *Corporation*, 630 F.3d 546 (7th Cir. 2010).  As explained in *White*, the *Bausch* plaintiff had

26

27        included several key facts in her original complaint, including: that the FDA
          investigated the Trident prior to plaintiff's surgery and issued a letter warning

28        to the defendant that the manufacturing methods were not in conformity with

4

**ANTHONY & ASSOCIATES**
1999 HARRISON STREET, SUITE 1620
OAKLAND, CA 94612

> regulatory standards; that the FDA's warning was for a Trident model bearing the same catalogue number as the one implanted in the plaintiff; and that the Trident implanted in the plaintiff was later recalled by the defendant. Id. at 559. The Court held that such facts made the plaintiff's "claim for relief 'plausible on its face' as required by *Iqbal* and *Twombly*."

2011 WL 1131496 at p. 6.

After Bausch came *Funk, supra*, in which the Fifth Circuit upheld dismissal of a claim on the grounds that the complaint "did not say 'how the manufacturing process failed, or how it deviated from the FDA approved manufacturing process.'"  2011 WL 1131496 at p. 6 (internal citation omitted.)  Finally, in March 2011 the Eleventh Circuit decided *Wolicki-Gables v. Arrow International, Inc.*, 2011 U.S. App. LEXIS 4596 (11th Cir. Mar. 8, 2011).  There a lower court dismissal was upheld, again because the allegations of FDA violations were generic and conclusory.

It does not appear from defendants' papers, nor from plaintiff's counsel's research, that the Ninth Circuit has addressed this issue.  Defendants cite only one district court case from within this circuit in their list of dismissed claims against the Trident(tm) system: *Cornwell v. Stryker Corp.*, 2010 WL 4641112 (D. Idaho, Nov. 1, 2010.)  Like all of the authorities discussed above, *Cornwell* acknowledged that a claim which is "parallel" to the FDA requirements would not be preempted.  Indeed the court stated that the plaintiff had successfully pled such a claim – the case was decided at the summary judgment stage after discovery revealed that the factual basis of the parallel claim was inaccurate:

> Plaintiff's Complaint alleges a violation of FDA regulations based on Plaintiff's belief (at the time the Complaint was filed) that the Trident component was manufactured at the facility where a FDA warning letter and voluntary recall applied. Discovery has established the component was not manufactured at the Cork, Ireland facility, so Plaintiff's basis for an alleged violation of FDA regulations fails.

*Id*. at p. 4.

Nor do the California cases cited by defendants contain any contrary authority.  In *Robinson v. Endovascular Technologies, Inc.*, 190 Cal.App.4th 1490 (Ct. App. 2010), the claims were held preempted under *Riegel* because "plaintiff has not alleged that defendants

5

ANTHONY & ASSOCIATES
1999 HARRISON STREET, SUITE 1620
OAKLAND, CA 94612

1  violated FDA regulations." *Id*. at p. 1500.  Likewise the court in *McGuan v. Endovascular*

2  *Technologies, Inc.*, 182 Cal.App.4th 974 (Ct. App. 2010) pointed out that the plaintiffs had "not

3  allege[d] that defendants violated FDA regulations."  *Id*. at p. 983.  Finally, in B*lanco v. Baxter*

4  *Healthcare*, 158 Cal.App.4th 1039 (Ct. App. 2008), the court's decision rested upon the fact that

5  "Blanco [did] not claim Baxter did not comply with the PMA process or the FDA administered

6  recall." *Id*. at p. 1054.  Thus none of these cases involved a claim which was "parallel" to the

7  FDA requirements.

8       It is telling that defendants chose not to mention *Bausch, supra*, a case which is squarely

9  on point as it concerns the same device at issue in this lawsuit, and the same defendants.  As in

10  *Bausch*, the plaintiff here has alleged that the FDA investigated the Trident, and found

11  defendants to be in violation of FDA regulations (First Amended Complaint, para. 18d, 20).

12       Should the Court decide to follow the holdings from other Circuits requiring more

13  specificity in pleading, leave to amend should still be granted.  As in *Cornwell, supra*, plaintiff

14  here is prepared to allege that her device was manufactured at the Cork, Ireland facility during

15  the time in which that facility was found by the FDA to have been violating its manufacturing

16  standards, and to cite to particular violations in doing so.  While the Court has already given

17  leave to amend once, the earlier motion to dismiss was not made on preemption grounds;

18  plaintiff should be given the opportunity to correct any perceived pleading defect as the issue

19  has been raised now for the first time.

20  **B.     Plaintiff's Claim Is Not Time-Barred**

21       Defendants once again assert that the claim appears time-barred on the face of the

22  complaint.  Not so.  Defendants' arguments notwithstanding, the discovery rule is clearly

23  applicable to this case.

24       The First Amended Complaint states:

25       The plaintiff was unaware of the injury from the defect until February, 2009
26       when the plaintiff had surgery that revealed the defective product that was
         improperly manufactured and as a result was defective. The plaintiff was unable
27       to discover the defect at any time earlier since although she sought and engaged
         in other medical treatments as ordered by her physicians she was only able to

28

6

ANTHONY & ASSOCIATES
1999 HARRISON STREET, SUITE 1620
OAKLAND, CA 94612

discover the defective product by undergoing a serious and invasive surgery
which she undertook at the time prescribed by her treating physicians and after
other treatment failed.

(First Amended Complaint, para. 5.)  This allegation satisfies the requirement of
*Grisham v. Philip Morris*, 40 Cal.4th 623, 628 (Cal. 2007) that the plaintiff plead facts to show
the time and manner of discovery, and the inability to have made an earlier discovery despite
reasonable diligence.  Nothing on the face of the complaint contradicts the straightforward
allegations set forth above – that discovery was made in February 2009, by means of revision
surgery, and could not have been made earlier.

Defendants attempt to argue that under *Rivas v. Safety-Kleen Corp.*, 98 Cal.App.4th 218
(Ct. App. 2002), *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103 (Cal. 1988) and *Knowles v. Superior
Court*, 118 Cal.App.4th 1290 (Ct. App. 2004), the limitations period in this case was triggered
as soon as the plaintiff experienced physical pain after surgery.  This is not the law, though; as
set forth in defendants' own moving papers, *Rivas*, *Jolly* and *Knowles* explicitly require that for
the cause of action to accrue, it must be the case that the plaintiff "'suspects or should suspect'
that his or her injury was 'caused by [someone's] wrongdoing ….'"  *Rivas*, *supra*, 98
Cal.App.4th at p. 228, quoting *Jolly*, *supra*.

Certainly the First Amended Complaint does not ***allege*** that plaintiff suspected
wrongdoing any earlier than February 2009.  Defendants therefore seem to argue (though they
do not explain themselves) that allegations elsewhere in the complaint somehow imply that she
should have suspected wrongdoing at an earlier time.  Specifically, defendants point to the
allegation that the acetabular shell loosened, and that when the shell loosens, it results in intense
physical pain.  "Thus," defendants triumphantly declare, "prior to her revision surgery in
February 2009, plaintiff suffered intense physical pain."  (Defendants' Motion at p. 10.)  From

7

ANTHONY & ASSOCIATES
1999 HARRISON STREET, SUITE 1620
OAKLAND, CA 94612

this they appear to deduce that she should have suspected wrongdoing – though, again, they do not spell this argument out, choosing instead to simply skip ahead to the conclusion.

The fact that plaintiff suffered pain did not, however, put her on notice of wrongdoing "The best medical treatment sometimes fails, or requires long and difficult recuperation, or produces bad side effects." *Gutierrez v. Mofid,* 39 Cal.3d 892 (Cal. 1985).  The mere fact that an operation does not produce hoped-for results does not signify negligence and will not cause commencement of the statutory period.  *Kitzig v. Nordquist,* 81 Cal. App. 4th 1384 (Ct. App. 2000).

Nor was plaintiff under some duty to investigate.  "So long as a suspicion exists" then the "plaintiff must go find the facts". *Jolly, supra,* 44 Cal. 3d 1103.  The law does not provide that an investigation is required prior to the plaintiff suspecting some wrongdoing.  There simply is no authority for the proposition that any time a surgical patient experiences pain, she must investigate whether it was the result of wrongdoing; such a rule would set the duty of diligence unreasonably high.

The statute of limitations commences to run once the plaintiff "…has the opportunity to obtain knowledge from sources open to his investigation …" *Sanchez v. South Hoover Hospital,* 18 Cal. 3d 93, 101 (Cal. 1976).  In addition, no plaintiff is "required to discover the negligent cause of her injuries at all costs to her own health and welfare." *Hills v. Aronsohn,* 152 Cal. App. 3d 753 (Ct. App. 1984).  In *Hills,* the court held that the statute of limitations did not begin to run for a plaintiff who had negligently administered silicone injections in 1966, but did not commence a lawsuit until 1978 even though she noticed problems in 1974.  The defense argued that in order to show requisite due diligence, the plaintiff needed to undergo a drastic surgery. The Court held that the plaintiff is only required to take reasonable steps and is not forced to

8

take extraordinary or risky measures.

Here, the defense proposes a rule that to pursue a claim for relief, the plaintiff was required to investigate the cause of her pain even if the only means of discovery (as the complaint unambiguously alleges) was the extraordinary, painful and risky step of revision surgery.  There is no such requirement in the law.  The motion should be denied, as the First Amended Complaint contains perfectly adequate allegations of the elements of the discovery rule.

## <u>CONCLUSION</u>

Defendants' preemption argument entirely sidesteps the critical issue, and their limitations argument is based on flawed logic.  The motion should be denied.

Dated August 4, 2011                       Respectfully Submitted,

ANTHONY & ASSOCIATES

By: /s/ Jane L. Trigero
     Steven R. Anthony
     Jane L. Trigero
     Attorneys for Plaintiffs
     GLORIA RHYNES and DARRELL JENKINS

ANTHONY & ASSOCIATES
1999 HARRISON STREET, SUITE 1620
OAKLAND, CA 94612

9