SEDGWICK LLP
Ralph Campillo (State Bar No. 70376)
ralph.campillo@sedgwicklaw.com
Mario Horwitz (State Bar No. 110965)
mario.horwitz@sedgwicklaw.com
James Nelson (State Bar No. 181256)
james.nelson@sedgwicklaw.com
801 South Figueroa Street, 19th Floor
Los Angeles, CA 90017-5556
Telephone: 213.426.6900
Facsimile: 213.426.6921

Attorneys for Defendants, Stryker Corporation and
Howmedica Osteonics Corp (sued as Stryker Orthopedics)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLORIA RHYNES, Individually and on Behalf of the General Public, and DARRELL JENKINS,<br><br>Plaintiff,<br><br>v.<br><br>STRYKER CORPORATION; STRYKER ORTHOPEDICS; and DOES 1 through 30, Inclusive;,<br><br>Defendant. | Case No. 3:10-cv-05619-SC<br><br>**STRYKER CORPORATION AND HOWMEDICA OSTEONICS CORP'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Judge: Hon. Samuel Conti<br>Date: 9/23/11<br>Time: 10:00 a.m.<br>Courtroom: 1 |

**MEMORANDUM OF POINTS AND AUTHORITIES**

The thrust of plaintiffs' Opposition appears to be that plaintiffs have pled – or can plead, if permitted – a so-called "parallel claim" which survives *Riegel* preemption.  Plaintiffs take issue with Defendants for failing to cite cases which discuss the stringent requirements for pleading such a claim.  The reason for this, however, is simple: plaintiffs' First Amended Complaint ("FAC") does not allege a parallel claim.  In fact, it does not come close to doing so.  Plaintiffs argue that paragraphs 18d and 20 of their FAC adequately allege a parallel claim [Doc. 30, pg. 6:9-11], but then quickly add that they should be given leave to amend.  [Doc. 30, pg. 6:16-19]

As set forth below, the FAC does not come close to alleging either 1) specific violations of the FDA's pre-market approval requirements of the Trident PMA, or 2) how those alleged violations caused injury to plaintiff.  A parallel claim cannot be pled without these allegations.[1]  Defendants discuss, below, the authorities plaintiffs claim were left out of the Motion to Dismiss.

On the statute of limitations, plaintiffs improperly persist in the fallacy that discovery of the defect is the operative accrual date of her time-barred claim.

**I.   PLAINTIFFS' AMENDED COMPLAINT DOES NOT SURVIVE *RIEGEL* PREEMPTION**

Plaintiffs concede that garden-variety state common law product liability claims are preempted by *Riegel*.  They assert, however, that "parallel" claims survive *Riegel's* express preemption.  While it is correct that some courts, based upon *dicta* from *Riegel*, have generally carved out an exception to preemption known as a "parallel claim," plaintiffs' Opposition does not begin to explain how the FAC pleads a parallel claim, notwithstanding their assertion "the plaintiff has alleged such violations, so the motion to dismiss cannot succeed on preemption grounds."  [Doc. 30, pg. 1-2].  As more fully set forth below, plaintiffs here have resorted to the pleading tactic that has resulted in dismissal time and time again: they have pled (or would like to plead, if permitted to amend), that defendants had some type of general regulatory issue with the product, and therefore plaintiffs have a "parallel" claim.  The authorities make clear that a

---

[1] Defendants do not concede plaintiffs will be able to plead a parallel claim simply by meeting this criteria.

plaintiff cannot simply incant the magic words "[Defendants] violated FDA regulations" in order to avoid preemption. *In re Medtronic, Inc.,* 592 F.Supp.2d 1147, 1158 (D. Minn. 2009). Plaintiffs' FAC does not survive preemption and should be dismissed without leave because it does not state a claim, as explained below.

## II.   PLAINTIFFS' ALLEGATIONS DO NOT STATE A PARALLEL CLAIM

*Riegel* leaves open a narrow avenue for avoiding preemption under the MDA for claims involving PMA-approved Class III devices, allowing a plaintiff to seek a state court damages remedy if, but only if, the state tort duties "'parallel,' rather than add to, federal requirements." *Riegel*, 128 S.Ct. at 1011.  While federal courts have differed in their interpretation of what is required to plead a "parallel claim," it is clear that parallel claims are those that are "premised on a violation of FDA regulations."  It is equally clear that a plaintiff cannot simply incant the magic words "FDA violation," as plaintiffs have done here.  The stringent requirements for pleading a parallel claim were concisely described in *Wolicki-Gables v. Arrow International, Inc.*, 634 F.3d 1296, 1302 (11th Cir. 2011) as follows:

> "Parallel claims must be specifically stated in the initial pleadings.  A Plaintiff must allege that "[the] defendant violated a particular federal specification referring to the device at issue." *Ilarraza v. Medtronic, Inc*., 677 F.Supp.2d 582, 589 (E.D.N.Y.2009).  "To properly allege parallel claims, the complaint must set forth facts" pointing to specific PMA requirements that have been violated.  *Parker v. Stryker Corp*., 584 F.Supp.2d 1298, 1301 (D. Colo. 2008).  The trial court stated in Parker that an allegation that "the manufacturing processes for the device and certain of their …components did not satisfy the Food and Drug Administration's Pre-Market Approval standards for the devices" is insufficient to satisfy the requisite elements of a parallel claim as set forth in *Riegel* if the complaint fails to "provide any factual detail to substantiate that crucial allegation."

This basic foundation is lacking in plaintiffs' FAC:  they do not cite, plead, or refer to a

1  single FDA regulation, much less a PMA requirement that was allegedly violated. Accordingly, under Federal Rule of Civil Procedure Rule 8, their complaint fails.

The FAC contains allegations similar to those at issue in *Funk v. Stryker*, 673 F.Supp.2d 522, 532 (S.D. Tex. 2009). In *Funk*, the District Court dismissed plaintiff's attempt to plead a parallel claim in part because plaintiff "did not cite a single FDA requirement violated by HOC." The Fifth Circuit affirmed finding insufficient plaintiff's allegations that the implant "contained a manufacturing defect in that it was manufactured in such a manner that impurities, residues and bacteria remained on the prosthesis in violation of the FDA standards and requirements and in violation of the manufacturing processes and design approved by the FDA." *Funk v. Stryker*, 631 F.3d 777, 782 (5th Cir. 2011). The Court found these allegations were vague and conclusory, and did not adequately allege a parallel claim. *Id*.

In addition to *Funk*, several other courts have found attempts by plaintiffs to assert "parallel claims" against the Trident system insufficient. *See Covert v. Stryker Corp.*, 2009 WL 2424559 *15 (M.D.N.C. Aug. 5, 2009) (allegations that the "manufacturing process for the acetabular hip implant device and certain of their components did not satisfy the Food and Drug Administration's Pre-Market Approval standards for the acetabular hip implant device" did not adequately plead a parallel claim under Rule 8 and *Iqbal*); *Delaney v Stryker* 2009 WL 564243 * 4, 6 (D.N.J. Mar. 5, 2009 ) (finding plaintiff could not avoid *Riegel* preemption simply by labeling a product defect claim a "manufacturing defect" where plaintiff "did not specify in what way HOC deviated from the manufacturing process that the FDA approved"); *Anthony v. Stryker Corp.*, 2010 WL 1387790 *4 (N.D. Ohio March 31, 2010) (finding plaintiff's attempt to recast generalized deviations from "manufacturing performance standards" as specific violations of federal regulations insufficient to state a claim). Moreover, in *Parker v. Stryker*, 584 F.Supp.2d 1298, (D. Colo. 2008), the plaintiff alleged defendants failed to comply with specifically cited federal regulations concerning Medical Device Reporting procedures, and failure analysis and quality assurance procedures. Nevertheless, the Court found a parallel claim was lacking and dismissed the action with prejudice. *Id*. at 1301-02.

Here, plaintiffs' allegations do not even go as far as the inadequate allegations in *Funk*.

Plaintiffs do not allege any FDA violation. Rather, plaintiffs merely allege "manufacturing contamination and manufacturing discrepancies caused the loosening of the shell." [Doc. 27, para. 5, lines 20-21]. This is patently insufficient under Rule 8 and *Iqbal*, and indeed, ignored by plaintiffs in their Opposition. It clearly fails the test of *White v. Stryker*, 2011 WL 1131496 *5 (W.D. Ky. Mar. 25, 2011) which noted "[i]n the case of MDA preemption, *Twombly* and *Iqbal* make a plaintiff's job more difficult than it would be in a typical product liability case." As such, the FAC is properly dismissed.

### III.   *BAUSCH & WARREN/HOFTS* IGNORE SUPREME COURT PLEADING PRECEDENT

Plaintiffs cite *Bausch v. Stryker* 630 F.3d 546 (7th Cir. 2010) and *Warren v. Howmedica* 2010 WL 5093097 (E.D. Mo. Dec. 8, 2010) in support of the argument that they have sufficiently pled a parallel claim. Another case in this distinct minority camp is *Hofts v. Howmedica Osteonics Corp*, 597 F.Supp.2d. 830 (S.D. Ind. 2009) upon which *Warren* followed in finding a sufficient parallel claim was pled. Initially, unlike the present case, in both *Hofts* and *Warren*, plaintiffs cited specific FDA regulations or PMA standards that the defendants allegedly violated. *See Hofts,* 597 F.Supp.2d at 836; *Warren,* 2010 WL 5093097 at *2.[2] Moreover, the lax pleading standard of *Hofts* (and *Warren*) has been widely criticized, considered and rejected by other courts addressing preemption issues involving the Trident system. In *Gelber v. Stryker*, 752 F.Supp.2d 328, 334 (S.D.N.Y. 2010) the Court specifically considered and rejected the *Hofts* lax pleading standard as not being in line with *Twombly*, noting that other courts have also done so. *See also Covert v. Stryker*, 2009 WL 2424559 *13 (M.D.N.C. Aug. 5, 2009) (noting that cases rejecting *Hofts* are "more persuasive" with regard to the *Twombly* pleading stands); *Horowitz* v. *Stryker Corp.,* 613 F.Supp.2d 271, 283, n. 5 (E.D.N.Y. 2009) (rejecting *Hofts'* standard for pleading parallel claims and noting that "requiring amplification as to how the defendants' alleged federal violations relate to the plaintiffs claims is

---

[2] Plaintiffs also argue that in *Cornwell* "the Court stated plaintiff had successfully pled a parallel claim." [Doc. 30, pg 5:17] This is inaccurate and untrue. The Court found the parallel claim pled was preempted under 21 U.S.C. Section 337(a) and dismissed the case, not on summary judgment, but for failing to state a claim pursuant to Rule 12(b)(6). *Cornwell v. Stryker*, 2011 WL 4641112 *4  (D. Idaho Nov. 1, 2010).

exactly what *Twombly* contemplates"); *Lewkut v. Stryker Corp.,* 724 F.Supp.2d 648, 658, n. 3 (rejecting *Hofts* "because the reasoning [] has been discredited by several other courts").

Additionally, the "analysis" in *Bausch v. Stryker*, 630 F.3d 546 (7th Cir. 2010) cannot be reconciled with the Supreme Court precedents of *Twombly* and *Iqbal*.[3] In its discussion of pleading a parallel claim, the *Bausch* Court acknowledged the requirements of *Twombly* and *Iqbal* initially, but then stated that when pleading a parallel claim in the medical device context, "[f]ormal discovery is necessary before a plaintiff can fairly be expected to provide a detailed statement of the specific bases for her claim." *Id*. at 558. On this basis alone, the Court found the District Court erred in dismissing the compliant. *Id*. Such a rule, however is at odds with *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009), wherein the Court "decline[d] respondent's invitation to relax the pleading requirements on the ground that the Court of Appeals promises petitioners minimally intrusive discovery . . . Because respondent's complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise." It is also at odds with the holding in *Twombly* that "before proceeding to discovery, a complaint must allege facts suggestive of illegal conduct" because "it is no answer to say that a claim just shy of plausible entitlement to relief can, if groundless, be weeded out early in the discovery process." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 559 (2007). The pleading allowed in *Bausch* is at odds with Supreme Court precedent, does not represent the majority view, may be reversed by the Supreme Court, and should not be followed.

### IV.  DISCOVERY OF THE ALLEGED DEFECT IS NOT THE ACCRUAL DATE

Notwithstanding the preemption bar, plaintiffs argue their two sentences alleging when plaintiff discovered the defect is sufficient to save their time-barred claims. It is not. It is extremely unlikely that plaintiffs have sufficient medical or engineering training, knowledge, or expertise to be able to "discover the defect" concerning this implantable, prescription medical device; rather it is more plausible that someone, likely plaintiff's surgeon or other treating physician, informed her of an alleged "defect," or a purported causal connection between her condition and the device. Under such circumstances, California law has specifically rejected a

---

[3] Defendants in *Bausch* filed a Petition for Writ of Certiorari in the U.S. Supreme Court on June 24, 2011, Case No. 10A1019, 11-2.

rule delaying accrual of a time-barred claim until such a communication or discovery occurs. *Rivas v. Safety-Kleen Corp.*, 98 Cal.App.4th 218, 228 (Ct. App. 2002) (rejecting accrual until a claimant has been told by his doctors that a certain product or substance caused a medical disorder). Here, plaintiff Rhynes alleges she suffered from "impaired mobility and intense pain and suffering" at some point after August 2005 and before February 2009. [See Doc. 27, pg. 5:17-25, in which plaintiff alleges her shell loosened, causing plaintiff impaired mobility, and intense pain and suffering, which required revision and replacement of defective components.] Sometime between these two dates her claim was discovered and accrued.

In California, discovery of a cause of action is met by mere suspicion of wrongdoing. *Nogart v. The Upjohn Co.*, 21 Cal.4th 383, 397 (Cal. 1999). However, even where the plaintiff does not have actual suspicion of wrongdoing (as plaintiff argues in opposition), the statute begins to run when the plaintiff reaches the point of inquiry notice, that is when she has information prompting a reasonable person to make inquiry about her claim, not when she confirms the accuracy or validity of her suspicion or acquires sufficient evidence to succeed on her claim. *Id.* at 398. Once on inquiry notice, plaintiff is charged with knowledge of the information that would have been revealed by such an investigation. *Fox v. Ethicon-Endo Surgery*, 35 Cal.4th 797, 807-08 (Cal. 2005).

Plaintiff allegedly suffered pain and mobility problems prompting her to seek expert assistance from her physicians concerning those issues. This culminated in her revision surgery in February 2009. Thus, she was on inquiry notice given the alleged pain and suffering precipitating her surgery. Plaintiffs can't purposely plead, contrary to established California law, that her time-barred claim was continuously tolled until "she discovered the defect," or in other words, until she was informed of a causal connection between her injuries and the device.

## V. LEAVE TO AMEND SHOULD BE DENIED

The Federal Rules of Civil Procedure require attorneys to "stop, think, investigate, and research" before filing papers to initiate suits or to conduct litigation. *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir. 1987). Conducting such an investigation would have revealed the publicly available information on the FDA website concerning the Trident system, including the

documents upon which plaintiffs apparently intend to rely upon to assert a parallel claim, if given the opportunity again. *See White v. Stryker Corp.*, 2011 WL 1131496 *7 (W.D. Ky. Mar. 25, 2011) (noting an "abundance of cases and information describe the Trident System and its PMA approval process" from which plaintiff could use to attempt to plead a parallel claim). Such an investigation would also have revealed the multitude of cases discussing preemption of the specific medical device at issue in this litigation, and the need to attempt to meet some very specific pleading requirements if such a case was to be filed. As defendants pointed this issue out, instead of it being discovered under the requisite investigation, leave to amend should be denied. *See Park v. Indiana Univ. School of Dentistry*, 2011 WL 1792717 *3 (S.D. Ind., May 9, 2011) (dismissing complaint without leave to amend in part because plaintiff waited for the defendants motion to dismiss to point out the shortcomings of her complaint).

Additionally, multiple courts have denied leave to amend when the original complaint did not plead a parallel claim concerning the Trident system. *See Parker v. Stryker Corp.*, 584 F.Supp.2d 1298 (D. Colo. 2008) (dismissing claims with prejudice in the first Trident™ case post-*Riegel*); *Bass v. Stryker*, 4:09-cv-00632, 2010 WL 3431637 (N.D. Tex. Aug. 31, 2010) (dismissing complaint for failing to plead a parallel claim and entering judgment for defendants the same day); *Anthony v. Stryker*, 2010 WL 1387790 (N.D. Ohio March 31, 2010) (dismissing all claims with prejudice); (*Delaney v. Stryker*, 2009 WL 564243 (D.N.J. March 5, 2009) (dismissing all claims, except breach of express warranty, with prejudice); *Lewkut v. Stryker*, 724 F.Supp.2d 648 (S.D. Tex. 2009) (dismissing all claims with prejudice).[4] Given the information publicly available concerning the device at issue in this case, the obligations under the Federal Rules, and the delay and inability of plaintiffs thus far to plead a plausible claim under Rule 8, including properly pleading a claim which is not time-barred, defendants request leave to amend be denied.

/ / /

/ / /

---

[4] In *Lewkut*, plaintiff filed an amended complaint before defendants appeared. Defendants' Motion to Dismiss the amended complaint was granted with prejudice.

## VI. CONCLUSION

Based on the foregoing, defendants respectfully request the Court dismiss plaintiffs' First Amended Complaint without leave to amend.

DATED:  August 11, 2011         SEDGWICK LLP


By: */s/ James Nelson*
     Ralph Campillo
     Mario Horwitz
     James Nelson
     Attorneys for Defendants, Stryker Corporation and
     Howmedica Osteonics Corp (sued as Stryker Orthopedics)